IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:17-CR-29 |
| vs. | |
| LEONARD E. MEGEE, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Leonard Megee's *pro se* motion for compassionate release (filing 59) and the supplemental motion for compassionate release (filing 70) filed on Megee's behalf by the Federal Public Defender. After careful consideration, the Court will grant Megee's compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based upon 18 U.S.C. § 3553(a), Megee's preexisting medical condition, and the risk presented by the COVID-19 pandemic.

Pursuant to § 3582(c)(1)(A)(i), a defendant may (after exhausting his administrative remedies) move for reduction of his term of imprisonment based upon "extraordinary and compelling reasons." The Court, after considering the factors enumerated in § 3553(a), may grant the motion if extraordinary and compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. And pursuant to U.S.S.G. § 1B1.13(2), the Court must also find the defendant is not a danger to the safety of any other person or to the community.[1]

---

[1] As the Court has previously explained, however, that guideline has not been amended in response to the statutory changes wrought by the First Step Act of 2018, Pub. L. No. 115-

Megee has exhausted his administrative remedies. The plain language of § 3582(c)(1)(A) permits a prisoner to move the Court for compassionate release after "either (1) the defendant has fully exhausted all administrative rights to appeal or (2) the lapse of 30 days from the receipt of such a request by the warden," and "the statute doesn't say that the second option evaporates if the warden happens to deny the prisoner's request before 30 days is up." *Jenkins*, 2020 WL 2814437, at *2. Megee's initial request to the Bureau of Prisons was denied over 30 days before his motion was filed. Filing 59 at 26.

Admittedly, Megee's medical conditions do not fit within clearly identified comorbidities for COVID-19, perhaps because they may not have been fully diagnosed. But the government does not dispute Megee's allegations that he has (among other things) a history of abnormal electrocardiograms as a result of a condition called a "bundle branch block," or that he has obstructive sleep apnea syndrome. Filing 59 at 8. COVID-19 is a complicated disease and much remains to be learned, but there is some reason to believe that severe COVID-19 disease is associated with abnormal electrocardiograms, including bundle branch blocks, although that may be a result of the disease rather than a comorbidity. *See* S. Andrew McCullough *et al.*, *Electrocardiographic Findings in Coronavirus Disease-19: Insights on Mortality and Underlying Myocardial Processes*, 26 J. of Cardiac Failure 626 (Jun. 13, 2020), https://doi.org/10.1016/j.cardfail.2020.06.005; *see also* Rakesh Gopinathannair *et al.*, *COVID-19 and cardiac arrhythmias: a global perspective on arrhythmia characteristics and management strategies*, J. of Interventional Cardiac Electrophysiology (Jun. 3, 2020), https://doi.org/10.1007/s10840-020-00789-9.

391, § 603(b), 132 Stat. 5194 (2018), and so no longer remains "applicable" guidance for the current version of § 3582(c)(1)(A)(i). *United States v. Jenkins*, No. 4:15-cr-3079, 2020 WL 2814437, at *3 (D. Neb. May 26, 2020).

Similarly, there has been some suggestion—but no strong evidence the Court can find—of a relationship between obstructive sleep apnea and severe COVID-19 disease. *See* Ahmet Cemal Pazarli *et al.*, *Coronavirus disease 2019 and obstructive sleep apnea syndrome*, Sleep and Breath (Apr. 28, 2020), https://doi.org/10.1007/s11325-020-02087-0. And the defendant's brief capably recites several other possible complicating conditions. *See* filing 70 at 23-25.

Of course, Megee's age—67 years old—also suggests vulnerability to COVID-19. It is, nonetheless, fair to say that Megee's clinical picture is muddled—he has conditions that haven't been conclusively ruled in or out as recognized comorbidities for COVID-19, but they are at least adjacent to recognized comorbidities, which is concerning. Just as important, then, is the fact that Megee has relatively little time left to serve. He's presently expected to be eligible for transition to a residential reentry center in less than 6 months, and for outright release in less than a year. And while the circumstances of Megee's offense were (and remain) troubling, there is no reason to believe that Megee represents a threat to others if released to home confinement and eventually the community. The Court particularly notes that Megee has pursued sex offender counseling/treatment and mental health education aggressively both before and after he was incarcerated, including the Bureau of Prisons' Sex Offender Management Program. That program is now unavailable because of the BOP's COVID-19-related lockdown, and the Court would obviously prefer that he obtain sex offender treatment (whether or not he is incarcerated) sooner rather than later. In addition, the Court observes that Megee has paid both his restitution obligation and a $5,000 assessment pursuant to the Victims of Trafficking Act of 2015.

It is well-understood that there is only so much that can be done to protect prisoners in an institutional environment. The Attorney General has

recognized as much. Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), https://bit.ly/2UayeDW; Memorandum from the Attorney General to the Director of the Bureau of Prisons (Mar. 26, 2020), https://bit.ly/3cuQrCB. Given that, the § 3553(a) factors, in conjunction with the extraordinary and compelling circumstances presented by the COVID-19 pandemic, counsel in favor of transitioning Megee to less restrictive confinement a few months early.

Accordingly, the Court will reduce Megee's sentence to a term of time served, and as part of the amended judgment will require as a special condition of supervised release that Megee spend at least 6 months in home confinement, under the Court's standard terms and conditions, unless earlier discharge from that provision is recommended by probation and approved by the Court.

IT IS ORDERED:

1.  Megee's motion for compassionate release (filing 59) and supplemental motion for compassionate release (filing 70) are granted.

2.  Megee's sentence is reduced to time served.

3.  As a special condition of supervised release, Megee will spend at least 6 months in home confinement, unless earlier discharge is recommended by the Office of Probation and Pretrial Services and approved by the Court.

4.  An amended judgment will be entered.

Dated this 28th day of July, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge